PAUL HARROLD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOHN H. CROMLING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 24532, 25545. Promulgated January 19, 1951.

*Harry Friedman, Esq.*, for the petitioners.
*Edwin P. Friedberg, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge:* The petitioners, who were on the accrual basis of accounting, argue in substance that in order correctly to reflect true income they could and should deduct in 1945 the estimated cost of

"backfilling" the strip-mined land, which in December 1945 was entered, in the amount of $31,090 (later by amended return reduced to $25,210.18), on the books as:

Depletion-Strip Mining Bonds to Credit Reserve for Strip Mining
    Bonds * * *_____ $31,090.00
To record expense accrued in replacement of surface (backfilling)
    in accordance with stripping permits * * *

This was, they argue, in accord with sound accounting, and the partnership was under contractual and statutory liability, during 1945 when mining, to backfill or replace the surface of the property mined, and had executed bond to the State to guarantee performance. The respondent argues that the partnership is not entitled to match income earned and reserved in 1945 against expenses incurred and paid in 1946; that the provisions of the Internal Revenue law do not necessarily give the same result as what the accounting profession terms good accounting theory, which requires setting up reserves for all liabilities, however contingent, whereas the Internal Revenue Code, with certain exceptions, does not permit deductions for creation or addition to reserve accounts; that (except for $916.41 for backfilling claimed by petitioners for 1944, though done in 1945) no cost for backfilling was incurred in 1945;[1] that income tax law is based upon annual periods of computation; that though admittedly the partnership had an obligation during 1945 to backfill the land, it had the same obligation in 1944 by virtue of the leases and contracts fixing the obligations of the parties; that the reserve involved was first set up in 1944 and no consistent method was used in computing additions to it, and that an obligation to incur a liability may not be accrued, and accrual is not proper until all facts giving rise to liability become fixed.

Both parties cite cases to support their respective positions, all of which need not be noted here, though all have been studied. Many are distinguishable from the instant matter. After careful examination of this question, we consider it clear that the petitioner is not entitled to deduct for 1945 the reserve set up in that year. The petioners' argument for good accounting practice and reliance upon United States v. Anderson, 269 U. S. 422, is met by Lucas v. American Code Co., 280 U. S. 445, which distinguishes the Anderson case by pointing out that it involved munitions taxes confessedly accrued and a charge on the business of 1916, the year for which deduction was allowed, and says:

---

[1] Though the respondent concedes the $916.41 to be a proper deduction for 1945, the petitioners do not ask for it, but asked for and obtained deduction in 1944. That year is not before us. We therefore make no further reference to the $916.41.

The prudent business man often sets up reserves to cover contingent liabilities. But they are not allowable as deductions. * * *

In our opinion, the matter is controlled by *Spencer, White & Prentis* v. *Commissioner*, 144 Fed. (2d) 45, certiorari denied, 323 U. S. 780; *Amalgamated Housing Corporation*, 37 B. T. A. 817, affd., 108 Fed. (2d) 1010; *Atlas Mixed Mortar Co.*, 23 B. T. A. 245; *William J. Ostheimer*, 1 B. T. A. 18. They stand for the proposition that a general obligation, such as to renovate, or restore property, is not such liability as to be basis for deducting a reserve based upon an estimate of the future cost of such work. In *Spencer, White & Prentis, supra*, the Court said, speaking of the estimated future cost of work which had not been performed in the taxable year:

* * * The only thing which had accrued was the obligation to do the work which might result in the estimated indebtedness after the work was performed.

The accrual of such estimate was denied, the Court further stating:

It is well settled that deductions may only be taken for the year in which the taxpayer's liability to pay becomes definite and certain, even though the transactions (such as the contract in the present case) which occasioned the liability, may have taken place in an earlier year. * * * [Citations] Here the work for which the deduction is sought was unperformed and its cost was, as we have already indicated, no more than a fair estimate. Such a deduction as the taxpayer seeks had not accrued "during the taxable year" * * *.

The Court distinguishes the *Anderson* case, *supra*, as one of estimated tax liability where all events determining liability had occurred. In *Capital Warehouse Co.* v. *Commissioner*, 171 Fed. (2d) 395, the Court says the point is the same as in *Spencer, White & Prentis* v. *Commissioner, supra*, and holds that though the obligation to pay the cost of "handling out" (paying cost of removal of goods from a warehouse) had become final during the taxable years in the sense that it was not a contingent liability, nevertheless the amount of the liability or cost of handling out was not definite or fixed and could not be deducted. In *Atlas Mixed Mortar Co., supra*, the situation was very similar to the one here involved. Property was leased for the purpose of excavating sand and gravel deposits. A city ordinance required a permit and bond to cover cost of refilling the proposed excavation. It was held that a credit to a reserve for refilling the sand pit, set up prior to such refilling, could not be deducted, the petitioner not having "incurred any liability in the taxable years for the payment of amounts to refill the sand pit." See also *Wilson Furs, Inc.*, 29 B. T. A. 319; *Yost Auto Co.*, 26 B. T. A. 685.

We conclude and hold that the Commissioner did not err in disallowing deduction of the $25,210.18.

*Decisions will be entered for the respondent.*